The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EVAN JAMES POLK, a/k/a JAMES MOZROK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LEONID GONTMAKHER, and JANE DOE GONTMAKHER, husband and wife, and the marital community composed thereof; C JOHN DOES 1-10 and JANE DOES 1-10, husbands and wives, and the martial communities composed thereof; and XYC LLCs 1-10,<br><br>Defendants. | Case No. 2:18-cv-01434-RAJ<br><br>**ORDER GRANTING MOTION TO DISMISS** |

This matter is before the Court on Defendant's motion to dismiss Plaintiff's amended complaint. Dkt. # 24. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons stated below, Defendant's motion is **GRANTED**.

## I. BACKGROUND

Overall, the factual allegations underlying the amended complaint have not materially changed from the original complaint. In late 2012 or early 2013, Defendant

ORDER - 1

Leonid Gontmakher ("Mr. Gontmakher" or "Defendant") approached Plaintiff Evan James Polk ("Mr. Polk" or "Plaintiff") about starting a cannabis growing and processing business in Washington. Dkt. # 21 at ¶ 3.2. At the time, Washington voters had just passed Initiative 502 regulating the production, distribution, and sale of marijuana and removing related state criminal and civil penalties—codified in the Washington Uniform Controlled Substances Act as RCW § 69.50.

Mr. Polk and Mr. Gontmakher initially launched their growing operation from a relative's house. Dkt. # 21 at ¶ 3.4. After the new cannabis regulations were promulgated, they decided to obtain a producer/processor license. Dkt. # 1 at ¶ 3.3. But, because of Mr. Polk's prior criminal record, he was prohibited from obtaining a producer or processor license under WAC 314-55-040(3)(b), absent mitigation of his criminal convictions. After realizing that Mr. Polk could not be listed as an owner of their licensed business, Northwest Cannabis Solutions ("NWCS"), Mr. Gontmakher and Mr. Polk agreed to move forward with the business anyway, verbally agreeing to be "equal partners" in the venture. Dkt. # 21 at ¶¶ 3.5-3.7. They ultimately agreed that Mr. Polk would receive a 30% ownership interest in NWCS, Mr. Gontmakher would receive a 30% interest, and the other investors would receive a 40% interest. *Id.* at ¶ 3.10.

Over time, the parties also explored different ways to make Mr. Polk's interest in NWCS legal. Dkt. # 21 at ¶¶ 3.11. In November 2013, Mr. Polk formed Matadon Consulting, an independent consulting firm, the purpose of which was to allow NWCS to legally pay Mr. Polk for his contributions to NWCS. Dkt. # 21 at ¶¶ 3.20, 3.25. The parties also discussed the possibility of putting Mr. Polk's "interest" in NWCS in the name of his brother, who did not have a criminal record. *Id.* at ¶ 3.17. Although these efforts were ultimately unsuccessful, Mr. Polk stayed with NWCS at Mr. Gontmakher's encouragement and proceeded to design and supervise the building of "one of the country's finest cannabis growing operations." *Id.* at ¶¶ 3.12-3.13.

ORDER - 2

In late 2014, Mr. Polk indicated that he wanted to leave NWCS because of continued concerns regarding the security of his "partnership interest," but Mr. Gontmakher convinced him to stay. *Id.* at 3.16.  During this time Mr. Polk alleges that Defendants were operating both a cannabis producer/processor licensee and cannabis retail licensee in violation of state law.  Dkt. # 21 at ¶ 3.32.  Finally, in September 2015, Mr. Polk left NWCS.  Dkt. # 1 at ¶ 3.28.  After his departure, the parties disputed what Mr. Polk was owed for his alleged interest in NWCS. Id. at ¶ 3.29.

As a result, in 2018, Mr. Polk sued Mr. Gontmakher, NWCS, and the other investors in NWCS, alleging, among other things, that he is entitled to an ownership interest in NWCS and past and future profits.  Dkt. # 1.  On November 30, 2018, Mr. Gontmakher moved to dismiss causes of action one to four, and cause of action six, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The Court granted the motion, noting that Mr. Polk was not seeking monetary damages that could be obtained legally, but rather "an equity interest in NWCS [a company that produces/processes marijuana] and a right to its past and future profits" in contravention of federal law.  Dkt. # 20 at 5.  On September 5, 2019, Plaintiff filed an amended complaint.  *See generally* Dkt. # 21.  Mr. Gontmakher once again moves to dismiss causes of action one to four of the amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Dkt. # 24.[1]

## II.  LEGAL STANDARD

### A.  FRCP 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim.  The court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations.  *Sanders v. Brown*, 504 F.3d 903,

---

[1] On September 20, 2019, the parties filed a stipulated motion to dismiss Plaintiff's claims against NWCS and Cannex Capital Holdings, Inc, which the Court granted.  Dkt. # 26.

ORDER - 3

910 (9th Cir. 2007).  A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief.  *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

This time around, Mr. Polk readily admits that his verbal agreement with Mr. Gontmakher is illegal under both federal and Washington law.  Dkt. # 30 at 6, 14.  However, Mr. Polk argues that the contract is still enforceable because "profits from an illegal transaction can be disgorged after the transaction is completed."  Dkt. # 30 at 15.  In *Planters' Bank v. Union Bank*, for example, the Ninth Circuit held that when an "illegal transaction has been consummated, when no court has been called upon to give aid to it, when the proceeds of the sale have been actually received . . . The court is there not asked to enforce an illegal contract." *Planters' Bank v. Union Bank*, 83 U.S. 483, 499 (1873); *see also, McDonald v. Lund*, 13 Wash. 412 (1896).  In this case however, Plaintiff's amended complaint does not support his claim that the illegal transaction has ended.  Instead, Mr. Polk asserts a right to both *past and future* profits from NWCS.  *See* Dkt. # 21 at ¶¶3.36–3.46.  Thus, Mr. Polk *is* asking the Court to enforce an ongoing illegal contract.

Mr. Polk next argues that even though his agreement is "illegal" it may still be enforced where the requested remedy does not require a violation of federal law.  Dkt. # 30 at 16.   Mr. Polk is correct that an illegal agreement may be enforced in certain circumstances where the requested remedy is not unlawful.  This principle has been

ORDER - 4

applied by several other courts to enforce cannabis-related agreements that would otherwise be unlawful under the CSA. *See e.g. Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.,* 163 F. Supp. 3d 821, 835 (D. Colo. 2016); *Ginsburg v. ICC Holdings*, LLC, No. 3:16-CV-2311-D, 2017 WL 5467688, at *8 (N.D. Tex. Nov. 13, 2017); *Mann v. Gullickson*, 2016 WL 6473215, at *7 (N.D. Cal. Nov. 2, 2016).

Here, however, Mr. Polk is not seeking damages divorced from the operations of NWCS. In fact, every single one of Mr. Polk's claims asserts a "right to" or "equitable interest in" the past and future profits of NWCS, a business that produces/processes marijuana. *See* Dkt. # 21 at ¶¶3.36–3.46. Mr. Polk's claim that his requested relief would not require a violation of the CSA defies logic. *See* Dkt. # 30 at 20. He is demanding the future profits of a business that produces and processes marijuana in violation of federal law. How does Mr. Polk anticipate NWCS will generate these future profits? The Court cannot fathom how ordering Defendants to turn over the future profits of a marijuana business would not require them to violate the CSA. And as this Court has previously explained to Mr. Polk, it cannot award him an equitable interest in NWCS because to do so would directly contravene federal law. *See* Dkt. # 20 at 5.

Finally, Mr. Polk argues that even though his agreement is illegal under Washington and federal law, the Court should enforce still enforce it under the doctrine of *in pari delicto*. Dkt. # 30 at 16. "The general rule of *in pari delicto* is that when the parties are of equal guilt, the defendant will prevail." *Goldberg v. Sanglier*, 96 Wash. 2d 864, 882 (1982). Mr. Polk is correct that the issue of whether the parties are equally blameworthy is a question of fact that cannot be resolved at the motion to dismiss stage.[2]

---

[2] In response to Plaintiff's reliance on the doctrine of *in pari delicto*, Defendants argue that there are no material issues of fact on this issue. Dkt. # 31 at 13. But the standard for a motion to dismiss is whether Plaintiff alleges sufficient facts to state a claim for relief, not whether there is a genuine issue of material fact. The Court declines to convert Defendant's motion to dismiss into a motion for summary judgment.

ORDER - 5

*See Metro. Mortg. & Sec. Co. v. Pricewaterhousecoopers*, LLP, No. CV-05-290-FVS, 2005 WL 3501873, at *5 (E.D. Wash. Dec. 21, 2005).  That said, the doctrine of *in pari delicto* will not rescue Mr. Polk's complaint if he cannot articulate a basis for this Court to grant the requested relief, without simultaneously endorsing a violation of federal law.  As discussed above, Mr. Polk's amended complaint fails to do so and must be dismissed.

Mr. Polk once again requests leave to amend his complaint to seek damages that would not necessitate a violation of federal law.  Dkt. # 30 at 26.  Under Federal Rule of Civil Procedure 15, courts should freely give leave to amend when justice so requires.  Fed. R. Civ. P. 15(a)(2).  This policy must be applied with "extreme liberality."  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  Accordingly, the Court will grant Mr. Polk one additional opportunity to amend his complaint to correct these deficiencies.  That said, Mr. Polk is warned that if his second amended complaint again fails to state a cognizable claim for relief, the Court may dismiss it with prejudice.

## IV.    CONCLUSION

For the above reasons, Defendant's motion to dismiss Plaintiff's amended complaint is **GRANTED**.  Plaintiff shall have **fourteen (14) days** from the date of this Order to file an amended pleading or the Court will dismiss this action.

DATED this 21st day of May, 2020.

The Honorable Richard A. Jones
United States District Judge

ORDER - 6